# Phil J. Sommer, Appellee, v. Gottfried Brewing Company, Appellant.

## Gen. No. 16,087B.

VERDICTS—*when set aside.* A verdict will be set aside on review as against the evidence where the Appellate Court is of the opinion that it is clearly and manifestly against the weight thereof.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed January 17, 1912.

O'DONNELL & O'DONNELL and MARK R. SHERMAN, for appellant.

KRUSE & PEDEN and ROY C. MERRICK, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit brought by the appellee, Phil J. Sommer, against the Gottfried Brewing Company, appellant, to recover a balance of $3,653, claimed by appellee to be due him from appellant for wages or salary from November, 1897, to December, 1903. Appellant filed a counter claim against appellee, claiming a balance due it of $888.09. A trial by jury in the Circuit Court resulted in a verdict and judgment against appellant for the full amount of appellee's claim.

In view of the fact that the counter claim filed by appellant involves items covering the entire period of appellee's employment, beginning in 1893, it is relevant to consider the evidence relating to the terms of such employment and the conduct of the parties with respect thereto. There is some contrariety in the evidence relating to the precise time appellee's employ-

ment commenced in 1893. Appellee insists he was employed in February, while the evidence offered on behalf of appellant tends to show his actual employment and wages commenced on June 24th, but the precise time is not of controlling importance. In 1893 appellant, being desirous of establishing an agency for the sale of its beer in West Pullman, employed appellee as its agent to solicit saloon keepers there to become its customers, to deliver beer to such customers from a store house to be there established, and to collect for beer sold and delivered. It is agreed that as compensation for his services appellee was to receive $80 a month, and that appellee was to be paid 40 cents per barrel upon the return to the brewery of the empty barrels. Appellee insists that the payment of 40 cents a barrel was to be made to him for commissions as additional compensation for his services, and as an incentive to greater effort on his part, while appellant insists that such payment was to be made to appellee for spending money to be used in procuring customers for appellant, and in retaining the good will of such customers. Upon this issue the testimony of the witnesses who were present when the contract of employment was entered into clearly preponderates in favor of appellant, and the documentary evidence, offered by appellee, consisting of monthly statements, prepared by him, of business transacted from June 24, 1893, to December 1, 1897, is decisively corroborative of appellant's insistence. In the statement for October, 1893, appears the charge to appellant for "Spending $123.35," and this amount corresponds exactly with the total at 40 cents a barrel upon the number of barrels indicated upon appellant's books, as having been returned empty by appellee, up to November 1, 1893; and in the several of said monthly statements following, the amounts charged by appellee to appellant for "Spending," correspond in some instances

exactly, and in other instances so approximately, with the totals at 40 cents a barrel upon the number of barrels indicated upon appellant's books as having been returned empty in each of said months, it cannot be doubted that the 40 cents a barrel in question was understood by appellee to be spending money, and was so used by him. It is conceded that the statements appearing in appellant's books of the number of barrels of beer received and sold by appellee, and of the number of empty barrels returned to the brewery, are correct. In further confirmation of the fact that 40 cents a barrel was allowed appellee for spending money, it appears that in each of said months appellee gave to appellant his receipt, wherein it was stated that said amount was "for spending." The aggregate of the amounts so received by appellee up to December 1, 1897, was $5,021.50.

Upon the several monthly statements so prepared by appellee appears an account of the number of barrels of beer on hand and received; the number of barrels of beer sold; the amount of cash collected from customers; the amount retained by appellee for wages and spending money; the amount paid helper and for incidental expenses of the business; and an amount indicated as "Bal.," which last amount was, in each instance, in excess of the total amount accounted for as retained and paid out by appellee. In other words, each of said statements shows upon its face a balance unaccounted for to appellant, the aggregate amount of such balances up to December 1, 1897, being $2,-135.26. In the chronological order of the transactions involved this balance of $2,135,26 forms the basis of appellant's counter claim against appellee.

In March, 1897, appellee's territory was enlarged to include Crete or Chicago Heights, and his salary was increased to $100 per month, with a like allowance as theretofore for spending money of 40 cents

on each barrel returned. This arrangement continued until December, 1897, when appellee's territory was again enlarged to include South Chicago, Hammond and Kankakee, and his salary was increased to $135 per month, with a general allowance for spending money to be paid to appellee upon statements therefor, approved by appellant's vice-president and general manager. It is claimed by appellee that under the agreement then made his salary was to be $125 per month until May, 1898, and that thereafter his salary was to be $150 per month, while appellant claims there was no agreement that appellee should be paid more than $125 per month. During the six years from December, 1897, until December, 1903, when he tendered his resignation to take effect December 31st, appellee drew only the sum of $100 per month as wages, and claims that, in pursuance of an understanding with the president and general manager of appellant, the balance of his salary, amounting to $25 per month up to May 1, 1898, and, as he claims, amounting to $50 per month thereafter, he permitted to remain and accumulate in the treasury of appellant, as savings, to be drawn out by him upon demand. The total amount claimed by appellee to have been thus retained by appellant for him is $3,653, to recover which amount he brought this suit and obtained a verdict and judgment as heretofore stated.

It is claimed by appellant that the balance of $2,-135.26, as shown by the monthly statements prepared by appellee, and $2,485.26, as shown by appellant's books, was the amount due and owing from appellee to appellant on December 1, 1897, while the claim of appellee is that said amount of $2,135.26 represents money actually spent by him from the date of his employment in 1893 to December 1, 1897, in procuring customers for and advancing the business interests of appellant, and that said money was so spent with the

knowledge and consent of appellant. Appellant further claims that in December, 1897, when appellee's salary was increased to $125 per month, it was conceded by appellee that he was then indebted to appellant in the amount of said balance of $2,485.26, and that it was then arranged and agreed between the parties that appellee should draw only $100 per month of his salary, and that $25 per month of his salary should be retained by appellant and credited upon appellee's said indebtedness to it. Each month thereafter appellant credited appellee's account with the sum of $25 as upon said indebtedness, and the amount remaining due and unpaid to appellant on account of said indebtedness thus appears to be $736.09, which amount, together with $152 claimed by appellant to have been collected by appellee in 1901 and 1903 and not accounted for, constitutes the counter claim of appellant against appellee.

The claim of appellee that the balance of $2,135.26, as it appears upon his statements, is the aggregate of the amounts spent by him each month in procuring customers for appellant, and in advancing its business interests, is not consistent with the showing made by the statements themselves. If, as is claimed by appellee, the several amounts which constitute said balance were so spent by him from month to month, it is evident that the statement for each succeeding month would show an amount in addition to that shown in the statement for the preceding month, as and for money so expended. As a matter of fact the statements show the contrary in many instances. The statement for October, 1893, shows a balance of $344.15, while the statement for November, 1893, shows a balance of $232.27, and the following show the like as to the several balances instanced: January 1894, $389.72; February 1894, $287.92; July 1894, $1,331.65; August 1894, $453.48; October 1894, $1,213.93; Novem-

ber 1894, $1,022.18; December 1894, $951.58; January 1895, $902.11; April 1895, $1,408.99; May 1895, $832.65; July 1895, $1,530.18; August 1895, $1,152.34; September 1895, $831.98; January 1896, $1,433.33; February 1896, $1,409.88; March 1896, $1,519.41; April 1896, $1,232.27; August 1896, $1,789.20; September 1896, $1,678.31; October 1896, $2,074.36; November 1896, $1,- 901.43; December 1896, $1,835.90; June 1897, $2,134.21; July 1897, $2,127.59; August 1897, $2,135.13; September 1897, $2,124.28; October 1897, $2,111.96. The verdict of the jury was necessarily predicated upon a finding that the balance in question was not due and owing from appellee to appellant, and in that respect it is against the manifest weight of the evidence, both documentary and the oral testimony of witnesses.

Upon the issue also as to whether the salary of appellee, in excess of $100 per month, was held by appellant to be applied upon the indebtedness, or as a savings fund for appellee, the verdict is against the clear preponderance of the evidence. During the six years appellee claims to have been accumulating a savings fund in the treasury of appellant, it does not appear that he ever requested a statement of his account. It is not claimed that appellant was to pay or be charged with interest upon such savings fund. The admitted conduct of appellee in the transaction is wholly inconsistent with the fact that he was in debt to a building and loan association during most of the period involved, and is also inconsistent with the usual course of business dealing.

It is not without significance that in reply to appellee's written communication to appellant, under date of December 12, 1903, wherein appellee resigned his position, appellant, on December 14th following, wrote to appellee accepting his resignation and requesting him to call at its office and make arrangements for

the payment of his indebtedness to it, and that appellee made no reply thereto.

Over the objection of appellant, the witness, Getze, called on behalf of appellee, was permitted to testify that it was customary for certain other brewing corporations to allow their agents spending money, amounting to $200 and $300 a month, for the purpose of working up trade. This testimony was improperly admitted. The contracts of employment were not ambiguous, and were not shown to have been entered into in view of any established trade custom or usage.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*